IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02326-PAB-NRN

HOLLY GOULD,

     Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

     Defendant.

_____

## ORDER
_____

     This matter is before the Court on Defendant's Motion for Partial Summary Judgment [Docket No. 52]. The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## I. BACKGROUND[1]

     On July 20, 2017, plaintiff was driving northbound on Indiana Street near 86th Avenue in Arvada, Colorado. *See* Docket No. 52 at 1, 3 ¶ 1. At the same time, defendant, who is a railroad company, was performing "track maintenance on [Union Pacific] tracks located on the bridge above Indiana Street." *See id.* at 3-4, ¶ 1. Rocks fell from the track, striking plaintiff through her car's sunroof as she drove on Indiana Street under the bridge. *Id.*

     Defendant admits that, on the day of the accident, "it had employees performing work on the railroad tracks located on the bridge, and it was responsible for performing

_____

[1] The following facts are undisputed unless otherwise indicated.

maintenance on the railroad tracks, walkways[,] and handrails of the bridge." *See id.* at 4, ¶ 5. Defendant acknowledges that it "was in control" of the bridge and the tracks leading up to the bridge "on either side." *Id.*, ¶ 7. The employees working on the bridge were "acting within the course and scope of their employment," those employees "were under the control and supervision" of defendant, and those employees "had control over the materials being used to maintain the railroad tracks and surrounding area." *See id.* at 5, ¶¶ 10-12. Defendant also "possessed the real property on the bridge." *Id.*, ¶ 13. Defendant did not control and was not in possession of Indiana Street where plaintiff was injured. *See* Docket No. 53 at 4, ¶ 20.

On July 16, 2019, plaintiff filed suit in the District Court for Boulder County, Colorado. *See* Docket No. 3 at 1. Defendant removed the case to federal court on August 14, 2019. *See* Docket No. 1. Plaintiff's complaint asserts five claims: (1) negligence; (2) violation of the Colorado Premises Liability Act, Colo. Rev. Stat. § 13-21-115; (3) respondeat superior; (4) negligent supervision; and (5) negligent training. *See* Docket No. 3. at 5-8. Plaintiff has agreed to dismiss her last two causes of action. *See* Docket No. 53 at 10. On July 24, 2020, defendant filed a motion for summary judgment. *See* Docket No. 52.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### III.  ANALYSIS[2]

Defendant argues that plaintiff's negligence and respondeat superior claims should be dismissed because the Colorado Premises Liability Act ("PLA") is exclusive of any other theory of negligence.  *See* Docket 52 at 6; *see also Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004) (holding that the PLA is the sole means by which an injured party can recover against a landowner); *Reid v. Berkowitz*, 370 P.3d 644, 648 (Colo. App. 2016) ("It is well established that [the PLA] abrogates common law negligence claims against landowners."). Plaintiff appears to agree that the PLA is generally the exclusive remedy, but argues that, because it is unclear whether the PLA applies, her negligence and respondeat superior claims should not be dismissed.  *See* Docket No. 53 at 8.  Specifically, plaintiff argues that it is "unclear" whether defendant is a "landowner" pursuant to the PLA and, therefore, the PLA may not apply.  *See id.* at 6. Plaintiff argues that defendant was neither in possession of Indiana Street nor legally permitted to drop rocks on Indiana Street and, therefore, is not a landowner.  *Id.* at 7-10.  Thus, plaintiff claims that the sole issue is whether defendant is a landowner under the PLA.

Before the enactment of the PLA, Colorado followed a "traditional negligence concept, requiring landowners to meet a standard of reasonable care."  *See Vigil*, 103 P.3d at 325.  In 1990, the Colorado Generally Assembly added "status classifications" for determining the liability of landowners.  *See id.*  Depending on whether the injured

---

[2] Because jurisdiction is based on diversity, the Court applies Colorado law in resolving the motion.  *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state.").

party is a trespasser, invitee, or licensee, the landowner's legal duty and the damages recoverable by the injured party change. *See id.* In adding these classifications, and setting out a specific procedure for landowner liability, the Colorado General Assembly "completely occup[ied] the field and supercede[d] the existing law in the area." *Id.* As a result, the PLA is the sole means by which an injured party can recover against a landowner. *See id.*; *see also* Colo. Rev. Stat. § 13-21-115(2) ("In any civil action brought against a landowner . . . the landowner shall be liable only as provided [by the PLA].").  Thus, in any suit against a landowner, the PLA governs.

The PLA defines a landowner as "without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." *See* Colo. Rev. Stat. § 13-21-115(1).  "Both statutory definitions confer landowner status on those who are responsible for the conditions, activities, or circumstances existing on real property." *See Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 346 P.3d 1035, 1041 (Colo. 2015).  Regarding the first definition, "a person in possession of land is one who occupies the land with intent to control it, although not necessarily to the exclusion of all others." *See id.* (citation and quotations omitted).  The second, however, "confer[s] landowner status on persons who are otherwise legally responsible for the conditions, activities, or circumstances on the property – even though such persons are not in possession of the property." *Id.* This second definition, "although broad, limits the protection of the PLA to those with legal authority to be on the land." *See id.* (citation omitted).  "At the same time, it places

prospective liability with those who are legally responsible for the conditions, activities, or circumstances on the property." *Id.* (citation omitted).

The first definition is not at issue since defendant did not possess the road on which plaintiff was driving at the time she was struck by the rocks. Thus, it is the second statutory definition that is at issue. Plaintiff argues that the "PLA may not apply" because defendant was not "legally" causing rocks to fall onto plaintiff. *See* Docket No. 53 at 7-8. In other words, because defendant was not authorized to drop rocks from the bridge onto the street below, it is not a landowner under the PLA. The Court finds this argument unpersuasive.

Plaintiff's only argument that the word "legally" operates in the fashion she contends is a lone statement from *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215 (Colo. 2002). Plaintiff, however, takes *Pierson's* directive that "legally" does not mean "someone who could be held legally liable for the alleged tort" out of context. *See id.* at 1220. The *Pierson* court noted that there were two interpretations of the second statutory definition: "It could be read to mean that a 'landowner' is someone who could be held legally liable for the alleged tort, or it could mean that a 'landowner' is someone who is legally conducting activity or creating a condition on the property and therefore responsible for that activity or condition." *See id.* The court reasoned that "[t]he first reading would be circular and absurd [because] [i]t would conclusively define as a 'landowner' anyone with legal liability to an entrant on property. It could even include a trespasser on private property who causes damage to another person so long as that trespasser could be held liable for the injury." *See id.* Notably, however, *Pierson* did not say that "legally" means that the dangerous condition itself was legal, as

6

plaintiff suggests, but that the activity creating the dangerous condition was legal.  *See id.* at 1221.  "[T]he focus becomes whether the defendant is someone who is legally entitled to be on the real property and whether that defendant is responsible for creating a condition on real property or conducting an activity on real property that injures an entrant."  *See id.*  Thus, plaintiff's argument is without merit.  The issue is not whether defendant was given authority to drop rocks onto the road below, but whether defendant was legally responsible for the conditions on Indiana Street.   *Jordan*, 346 P.3d at 1041. Here, however, even if it created a hazard that escaped the bridge and fell onto plaintiff, defendant had no legal responsibility under the PLA for Indiana Street where plaintiff was injured.

In *Burbach v. Canwest Investments, LLC*, 224 P.3d 437, 438 (Colo. App. 2009), the appellant, Cynthia Burbach, slipped and fell on snow that had accumulated on a sidewalk next to the property that the appellee, Canwest Investments, owned.  *Id.*  Ms. Burbach sued Canwest under the PLA, arguing that, because a municipal ordinance required Canwest to clear snow from the sidewalk, Canwest was legally responsible for creating the slippery conditions on the sidewalk.  *Id.* at 441.  The court noted that "the statute governs liability vis-a-vis property of another, which means the landowner's property."  *Id.* (quotations omitted); *see also Vigil*, 103 P.3d at 329 n.12 (stating that a plaintiff injured on a sidewalk was not injured "while on the real property" of the landowner because the sidewalk was publicly owned).  The court reasoned that, although the second definition does apply to a person who is "legally responsible" for the condition on the property, and that such a person need not be in possession of the property, that person still must have "a right to be on [the] property by virtue of some

7

legally cognizable interest in the property or a right personal to that party (i.e., distinguishable from any right of the public generally)."  *Burbach*, 224 P.3d at 441. Thus, because the snow removal ordinance did "not convey any legal interest in the sidewalks to the adjacent property owners," Canwest was not a landowner within the meaning of the PLA, even if it created the slippery conditions by failing to shovel.  *Id.*

*Jordan* involved a private sidewalk as part of a medical complex.  The petitioner, after visiting the Panorama Orthopedics & Spine Center ("Panorama"), "tripped over uneven sidewalk slabs near" the entrance to Panorama and injured herself.  *See Jordan*, 346 P.3d at 1037.  Panorama was a "large orthopedics clinic," which, although bearing Panorama's name on the building, "had three other tenants."  *Id.*  Additionally, Panorama was not the landlord.  *Id.*  The landlord was responsible for maintaining common areas, although Panorama could do so if the landlord failed to provide maintenance.  *Id.* at 1037-38.  Panorama argued that it was not a landowner; the Colorado Supreme Court agreed.  *See id.* at 1043.  Specifically, the court concluded that "Panorama was not legally responsible for the condition of the sidewalk or for the activities conducted or circumstances existing there," and Panorama was also "not conducting any activity on the sidewalk where [petitioner] fell."  *Id.* at 1044.  It was the landlord, not Panorama, who was in charge of maintaining the sidewalk and, therefore, any conditions existing on the sidewalk were the responsibility of the landlord, not Panorama.  *Id.*  *Jordan* demonstrates two points.  First, a party who is not generally responsible for the maintenance of the property, but nonetheless has a legal interest in the property – Panorama as a tenant – could still be liable if that party "conduct[s] any activity" on the property where a person is injured.  *Id.*  Second, a party not conducting

8

any activity at all, but who nonetheless has a legal interest in the property and a legal duty to maintain the property, e.g., the landlord, can be liable for injuries that occur on the property.  *Id.*

Together, these cases make it clear that defendant is not a landowner under the PLA.  It did not have any legally cognizable right in the property where plaintiff was injured, namely, Indiana Street.  Rather, it only had the legal right to be on the bridge and work on the tracks above Indiana Street.  *See* Docket No. 52 at 4, ¶¶ 5-7.  Thus, defendant had no right "distinguishable from any right of the public generally" in Indiana Street.  *Burbach*, 224 P.3d at 441.  In other words, defendant was not "legally entitled" to be on Indiana Street.  *See Pierson*, 48 P.3d at 1221.  Defendant is also not like the landlord or the tenant in *Jordan*.  If defendant was somehow responsible for the maintenance of Indiana Street – like the landlord in *Jordan* was responsible for sidewalk maintenance – then defendant might be a landowner.  But it is undisputed that defendant did not have control over Indiana Street or have responsibility for its care.  *See* Docket No. 53 at 4-5, ¶¶ 16-20.  Additionally, even if defendant's activity on the bridge could be considered as "conducting any activity" on Indiana Street below, that would still be insufficient.  *Jordan*, 346 P.3d at 1044.  Defendant must also have some sort of legal interest in Indiana Street, just like Panorama was a tenant and therefore had a legal interest in the private sidewalk.  *Id.*

While the parties have focused their arguments on the definition of "landowner" in the PLA, there is a more fundamental reason that the PLA does not apply.  The PLA applies to trespassers, licensees, and invitees on land.  *See* Colo. Rev. Stat. § 13-21-115(3).  An "invitee" is a "person who enters or remains on the land of another to

9

transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." *Id.*, § 115(5)(a). A "licensee" is "person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent." *Id.*, § 115(5)(b). And a "trespasser" is "a person who enters or remains on the land of another without the landowner's consent." *Id.*, § 115(5)(c).

Plaintiff does not fall into any of these categories. She did not drive through or on any property or right of way owned by defendant. Defendant could not "invite" plaintiff onto Indiana Street because defendant did not own, possess, or control it. While plaintiff might have entered or remained on Indiana Street for her "own convenience or to advance [her] own interests," she still could not be a licensee of defendant because she did not require defendant's "permission or consent" to drive along Indiana Street. *Id.*, § 115(5)(b). And, finally, plaintiff could not be a "trespasser" because, even if defendant withheld its consent for plaintiff to drive on Indiana Street, that withholding would be inoperative because defendant has no ability to prevent plaintiff from driving on a public road. Plaintiff is not of the class of people to whom the statute applies.

Defendant's motion for summary judgment only sought to dismiss plaintiff's negligence claims as precluded by the PLA. *See* Docket 52 at 6. Defendant did not seek to dismiss plaintiff's PLA claim. Rather, defendant argued that the PLA claim is the only viable cause of action. *See id.* However, the Court has determined that the

PLA is inapplicable on these facts and, therefore, the Court will dismiss plaintiff's PLA

claim and deny defendant's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Partial Summary Judgment [Docket No.

52] is **DENIED**.  It is further

**ORDERED** that plaintiff's second claim under the Colorado Premises Liability Act

is **DISMISSED** with prejudice.


DATED March 30, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

11