IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02326-PAB-NRN

HOLLY GOULD,

> Plaintiff,

v.

UNION PACIFIC RAILROAD COMPANY,

> Defendant.

_____

**ORDER**
_____

This matter is before the Court on defendant's Motion to Exclude the Expert

Testimony of Augustine Ubaldi [Docket No. 68], Plaintiff's Motion to Preclude and Limit

the Testimony of Jeffrey Broker [Docket No. 69], and Plaintiff's Motion to Preclude and

Limit the Testimony of Hal Wortzel [Docket No. 70].

## I.  BACKGROUND

On July 20, 2017, plaintiff was driving northbound on Indiana Street near 86th

Avenue in Arvada, Colorado.  *See* Docket No. 52 at 1, 3 ¶ 1.  At the same time,

defendant, who is a railroad company, was performing "track maintenance on [Union

Pacific] tracks located on the bridge above Indiana Street."  *See id.* at 3-4, ¶ 1.  As

plaintiff drove under the bridge on Indiana Street, rocks fell from the track, striking

plaintiff through her car's sunroof.  *Id.*  Defendant admits in the Final Pretrial Order that

it had a duty of care to those driving below the bridge and that it breached that duty

when the rocks fell.  Docket No. 72 at 4, 6.  Accordingly, defendant contests only the

scope and cause of plaintiff's injuries.  *Id.* at 5.  In an effort to prove or disprove

plaintiff's injuries, each side retained experts, opinions of which both sides seek to exclude.

## II.  LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area.  Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability.  *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  To perform that function, a court must "assess the reasoning and methodology underlying the expert's

2

opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93).  Where an expert witness relies on experience in stating opinions, the expert "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."  *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

In addition to the witness having appropriate qualifications and methods, the proponent of the witness's opinions must demonstrate that the process by which the witness derived his or her opinions is reliable.  *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008).  "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, the proffer is tested against the standard of reliability, not correctness, *see Goebel v. Denver and Rio Grande Western R.R. Co.*, 346 F.3d 987, 991 (10th Cir.

2003); the proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *Crabbe*, 556 F. Supp. 2d at 1221.

Assuming the standard for reliability is met, the Court must also ensure that the proffered testimony will assist the trier of fact. *See Kumho Tire*, 526 U.S. at 156; *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). "Relevant expert testimony must logically advance[] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted). In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Id.* at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

Finally, Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III.  ANALYSIS

### A.  Defendant's Motion to Exclude Testimony of Augustine Ubaldi

Defendants move to preclude Augustine Ubaldi from testifying regarding three of his opinions: (1) defendant's "failure to provide adequate measures to prevent objects

from falling onto the highway was improper, unreasonable and a cause of this incident";
(2) defendant's "failure to include the possibility of objects falling onto the highway in
safety briefings was improper, unreasonable, and a cause of this incident"; and (3)
defendant's "failure to provide alternative, supplemental measures to protect the public
from objects falling onto the highway was unreasonable, improper, and a cause of this
incident." *See* Docket No. 68 at 2-3.  Mr. Ubaldi was disclosed by plaintiff as an expert
on railroad safety.  *See* Docket No. 68-1 at 8; *see also* Docket No. 77-2.  Defendant
argues that, because it has admitted that its conduct was improper and unreasonable,
Mr. Ubaldi's opinions regarding the reasonableness and cause of plaintiff's injuries is
irrelevant and will not assist the trier of fact.  *See* Docket No. 68 at 3.

     In resolving a Rule 702 challenge based on relevance, a court must determine
whether the challenged opinion "will assist the trier of fact to understand or determine a
fact in issue." *United States v. Muldrow*, 19 F.3d 1332, 1337 (10th Cir. 1994) (citation
omitted).  This inquiry involves a consideration of "whether the proposed testimony is
sufficiently relevant to the task at hand." *Norris v. Baxter Healthcare Corp.*, 397 F.3d
878, 884 (10th Cir. 2005) (citation and quotations omitted).  "Relevant expert testimony
must logically advance a material aspect of the case and be sufficiently tied to the facts
of the case that it will aid the jury in resolving a factual dispute." *United States v.
Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted).

     To prove her negligence claim, plaintiff must prove that: (1) defendant had a
duty; (2) defendant breached that duty; (3) plaintiff suffered an injury; and (4)
defendant's breach caused that injury.  *See Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo.
2002).  Mr. Ubaldi's opinions regarding railway safety and defendant's actions are

directly relevant to the first and second element of plaintiff's claim.  However, defendant has stipulated that it owed plaintiff a duty of reasonable care and that "it did not use reasonable care to prevent ballast from falling off the bridge and [therefore] violated its duty to those driving on the public roadway."  Docket No. 72 at 4, 6.  Defendant only contests that "negligence caused the injuries [p]laintiff is claiming" and the "nature and severity of [plaintiff's] alleged injuries."  *See id.* at 5.  Accordingly, the only material dispute in this case is the extent of plaintiff's injuries.  Mr. Ubaldi, however, does not offer any opinions regarding the extent of plaintiff's injuries or the cause of them.  Rather, his entire report, and in particular the three opinions defendant seeks to exclude, is dedicated to discussing relevant safety hazards, the appropriate means of addressing them, and why defendant's actions were improper and unsafe.  *See generally* Docket No. 68-1.  But those issues are not in dispute.  Defendant admits it was negligent and that it failed "to ensure the installation of adequate safety protection on or around the bridge that would have prevented rocks from falling off."  *See* Docket No. 72 at 4-6.

Plaintiff argues that Mr Ubaldi's testimony is relevant for two reasons: (1) defendant has not admitted liability and therefore Mr. Ubaldi will assist the jury in understanding the standards of care that apply to railroads and (2) it is relevant to plaintiff's claim for exemplary damages.  Docket No. 77 at 5-6.  The Court finds the first argument unpersuasive.  As noted, defendant has admitted that it had a duty of care and breached that duty to those who drove under the bridge.  While it is true that defendant has "not admitted liability," *id.* at 6, defendant has admitted those elements of plaintiff's negligence claim that are relevant to Mr. Ubaldi's testimony.

As to the second, to state a claim for exemplary damages, a plaintiff must demonstrate that the circumstances causing the injury were "attended by . . . fraud, malice, or willful and wanton conduct."  *See* Colo. Rev. Stat. § 13-21-102(1)(a).  Willful or wanton conduct "means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." § 102(1)(b).  Mr. Ubaldi's report does not directly reference any of these issues. However, Mr. Ubaldi's third opinion, that there were "alternative [and] supplemental measures," Docket No. 68 at 3, speaks to the types of alternatives defendant had in making the work zone safe.  While Mr. Ubaldi may not testify that defendant was, in fact, willful or wanton, he may discuss the various options defendant had and the relative difficulty of exercising those safety measures in an effort to assist the trier of fact in determining whether defendant was willful or wanton.

### B.  Plaintiff's Motion to Exclude Testimony of Jeffrey Broker

Plaintiff moves to preclude Jeffrey Broker from testifying regarding two categories of opinions: (1) alleged medical opinions and (2) opinions on the extent of plaintiff's claimed injuries.  *See* Docket No. 69 at 4-12.  Dr. Broker was disclosed by defendant as an expert on biomechanics.  *See* Docket No. 69-3.  Plaintiff has two general categories of objections to Dr. Broker's opinions: (1) certain of his biomechanic opinions are effectively medical diagnoses that he is unqualified to make and (2) some of his opinions regarding the extent of plaintiff's injuries are improper credibility opinions. Docket No. 69 at 4-12.

*1.  Medical Opinions and Qualifications*

7

Plaintiff seeks to exclude ten opinions of Dr. Broker that plaintiff argues are medical opinions. *See id.* at 4-8. Defendant responds that Dr. Broker is an expert in biomechanics as demonstrated by his (1) bachelor's degree in mechanical engineering; (2) Ph.D. in kinesiology; (3) and his teaching of university courses in biomechanics. *See* Docket No. 76 at 4-5. Furthermore, defendant contends that Dr. Broker's opinions fall squarely within his expertise. *Id.* at 4-13.

Under Rule 702, an expert's qualifications may derive from knowledge, skill, experience, training, or education. "[A]s long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996)) (quotations and alterations omitted); *see also Zuchowicz v. United States*, 140 F.3d 381, 387 (2d Cir. 1998) ("[D]isputes as to the strength of his credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony.").

Furthermore, "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training." *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011). A court "should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court." *Id.*

The Court notes that plaintiff does not contest that Dr. Broker is an expert in biomechanics.  Dr. Broker's report demonstrates a familiarity with the physics and impacts that would surround an accident like plaintiff's, including analyzing the relative size of the ballast rocks that fell, the distance of the fall, and the speed of the car.  *See generally* Docket No. 69-1.  Additionally, Dr. Broker has over three decades of experience in the biomechanics industry, including as the owner of a biomechanics engineering firm and as a professor of biomechanics.  As a result, Dr. Broker has "technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or determine a fact in issue."  Fed. R. Evid. 702(a).

As to whether Dr. Broker's opinions are improper medical opinions, the Court finds that the majority of Dr. Broker's opinions are within the confines of his expertise. As another court found, it is helpful to begin with a definition of biomechanics: "the science concerned with the action of forces, internal and external, on the living body. Biomechanical experts have extensive knowledge about how human bodies move when forces are applied to them and thus may provide testimony as to how vehicle occupants move and are impacted in vehicular accidents."  *See Finn v. BNSF Ry. Co.*, 2013 WL 462057, at *2 (D. Wyo. Feb. 6, 2013) (citations and quotations omitted).  Thus, as Dr. Broker himself stated, biomechanical engineers do not "diagnos[e] or prognos[e]." Docket No. 69-4 at 4.  Rather, his opinions should only relate to whether "the biomechanics support the claim."  *Id*.  In other words, Dr. Broker may only opine on whether the injuries claimed by plaintiff or diagnosed in her medical documents are supported by the relevant forces in action during plaintiff's accident.  Numerous courts have found such testimony appropriate.  *See Finn*, 2013 WL 462057, at *3 ("Dr. Broker

9

may testify concerning the biomechanical forces involved in this accident and the relationship between those forces and medical conditions diagnosed by Plaintiff's treating doctors."); *Delgado v. Unruh*, 2017 WL 957437, at *13 (D. Kan. Mar. 13, 2017) ("[Dr. Raasch] is not qualified to diagnose injuries, but she may interpret the diagnoses of Plaintiff's treating physicians in order to opine on the likely mechanisms of Plaintiff's injuries."); *Wagoner v. Schlumberger Tech. Corp.*, 2008 WL 5120750, at *1 (D. Wyo. June 19, 2008) (stating that a biomechanical expert may "testify as to the forces involved in the low speed accident and how those forces affect an individual or an object"); *see also Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014) (unpublished) (noting that biomechanics is a "proper topic[] for expert testimony"). Thus, as the Reference Guide on Engineering published by the Federal Judicial Center states, "a biomechanical expert may opine about whether plaintiff's 'alleged damages were caused by the conduct in question.'" *Pike v. Premier Transp. & Warehousing, Inc.*, 2016 WL 6599940, at *3 (N.D. Ill. Nov. 8, 2016) (quoting, Channing R, Robertson, John E. Moalli & David Black, *Reference Guide on Engineering* 942-43 (Fed. Jud. Ctr., 3d Ed. 2011)).

The question then becomes whether any of the opinions identified by plaintiff cross the line from permissible biomechanical opinions into impermissible medical diagnoses.  The Court finds that three opinions are impermissible medical diagnoses, and two others outside of Dr. Broker's expertise.  First, plaintiff seeks to exclude Dr. Broker's opinion that plaintiff's "thoracic and lumbar spine issues probably pre-dated the subject accident and are degenerative in nature."  Docket No. 69 at 5.  Dr. Broker's opinion, taken in context, that the thoracic and lumbar spine issues pre-date the

10

accident, is an opinion that the diagnosed spine issues could not be caused by the forces involved in the accident.  This is an appropriate biomechanical opinion. However, his opinion that they are "degenerative in nature," *id.*, goes beyond applying the forces in motion at the accident and amounts to a medical opinion.  Accordingly, that portion of the opinion will be excluded.

Second, plaintiff seeks to exclude Dr. Broker's opinion that plaintiff's neck issues were more likely caused by her cleaning job.  *See id.*  This will not be excluded: Dr. Broker is stating his opinion that, based on plaintiff's diagnosed neck problems, it is unlikely they were caused by the accident, but by another force in the record, namely her cleaning job.  Third, plaintiff seeks to exclude the opinion that plaintiff's "lower extremity complaints . . . appear related to her low back issues."  *Id.* at 6.  The Court finds that this is an impermissible medical diagnosis.  Dr. Broker is not qualified to provide a medical diagnosis that plaintiff's lower extremity issues are tied to another medical problem of hers.  Accordingly, this opinion will be excluded.

Fourth, plaintiff seeks to exclude Dr. Broker's opinion that most of plaintiff's injuries can be explained "by her pre-accident state, and not acute traumatic injury."  *Id.* This statement is Dr. Broker's opinion that the forces acting on plaintiff's body at the accident – acute traumatic injury – would not likely cause plaintiff's diagnosed injuries, an opinion within in his expertise.  This opinion will not be excluded.  Fifth and sixth, plaintiff seeks to exclude Dr. Broker's opinion that, based on the size and falling nature of the rocks, there should be some record of injuries from those rocks.  *Id.*  Here, Dr. Broker is analyzing the force and nature of the rocks and applying them to the observed or complained of injuries noted in the medical records.  Accordingly, these opinions will

not be excluded. Seventh, plaintiff seeks to exclude Dr. Broker's opinion that there is no evidence in the record to support several of plaintiff's subjective complaints. *Id.* While Dr. Broker may testify that these injuries are inconsistent with the forces involved in the accident, *see id.* ("The suggestion that her right eye was bloodshot within a few hours of the accident is unconfirmed by any provided medical record."), he may not comment on when plaintiff first complained of these symptoms as a comment on plaintiff's credibility.

Eighth, plaintiff seeks to exclude the opinion that her "thoracic and lumbar spine findings are degenerative in nature . . . and not indicative of an acute injury." *Id.* While the opinion regarding the degenerative nature of plaintiff's injuries will be excluded for the same reasons as Dr. Broker's first opinion, he is permitted to testify that the injuries are "not indicative of an acute injury," which is within his expertise. *Id.* Ninth, the Court will permit Dr. Broker's opinion that there is "no documented objective evidence" to support her concussion claims as those claims relate to the forces in the accident, but he may not use this opinion as a means to comment on plaintiff's credibility. *See id.* Finally, plaintiff seeks to exclude Dr. Broker's opinion that causation is difficult to prove in a case like plaintiff's because reporting is subjective. *See id.* at 7. The Court finds that this is a permissible statement and will not be excluded. Dr. Broker is stating that doctors diagnose an injury, but do not have the facts to determine the forces that might cause that injury, whereas biomechanics help to demonstrate causation. Accordingly, it is appropriate for him to discuss why causation is difficult to demonstrate just from the medical records.

*2. Credibility*

12

Plaintiff seeks to exclude four of Dr. Broker's opinions that plaintiff argues impermissibly touch on the credibility of plaintiff. *See id.* at 8-10. Specifically, plaintiff argues that these opinions encroach on the jury's credibility determination. *Id.* at 9. Defendant responds that Dr. Broker is simply opining whether certain forces could cause or did cause plaintiff's alleged injuries which naturally impacts plaintiff's credibility. Docket No. 76 at 12-14. The Court agrees with defendant, except as to two opinions.

The Court notes that *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001), which plaintiff cites, does not support plaintiff's argument that credibility determinations are per se inadmissible under Rule 702. Rather, the Tenth Circuit held that credibility is "generally not appropriate" because it can usurp the jury's function to make its own credibility determinations. *Id.* An expert's opinion that a witness is lying "might be" inadmissible because it could "exceed[] the scope of the expert's specialized knowledge." *Id.* Here, however, there generally are no such issues.

First, plaintiff seeks to exclude Dr. Broker's opinion that "the disparity between her claims and the physical evidence raise questions about the veracity of her claims." Docket No. 69 at 8. The Court finds that this impermissibly impinges on the jury's function. This opinion is not focused on any particular claimed injury and the forces interacting with that injury, but is making a blanket statement regarding plaintiff's credibility. Accordingly, this statement will be excluded. Second, plaintiff seeks to exclude Dr. Broker's opinion that the "veracity" of plaintiff's claim that she was hit directly on the head with rocks is called into question by her injuries. *Id.* This will not be excluded. Dr. Broker is opining that, based on the medical record, which shows no head injuries related to rocks, and based on how the rocks would have fallen onto her

13

head, it is unlikely that falling rocks caused her injuries.  Third, plaintiff seeks, again, to exclude Dr. Broker's opinion that is it difficult to prove causation simply with medical diagnoses.  Plaintiff does not explain how this statement deals with the jury's credibility function, and the Court finds that it does not.  Accordingly, it will not be excluded. Finally, plaintiff seeks to exclude Dr. Broker's statement that plaintiff "clearly exaggerated the misrepresented the accident dynamics and events in her complaint and to her medical providers."  *Id.* at 9.  The Court will exclude Dr. Broker's sweeping comment statement that plaintiff is exaggerating, because it serves as a summary comment as to plaintiff's credibility, but will not exclude Dr. Broker's opinion that, based on the biomechanical forces in action and the objective diagnoses, plaintiff likely was not injured in the way she was claimed, which is within Dr. Broker's expertise.

### 3.  Exclusion Pursuant to Rule 403

Finally, plaintiff seeks to exclude, pursuant to Rule 403, all of Dr. Broker's testimony already identified.  *See id.* at 11-12.  Plaintiff's argument is that Dr. Broker is unqualified to express medical opinions and his other opinions impinge on the jury's credibility function.  *Id.*  Thus, according to plaintiff, because Dr. Broker is unqualified and is making credibility determinations, it is prejudicial for the jury to hear his testimony.  The Court finds this argument unpersuasive.  As the Court already determined, most of Dr. Broker's opinions are not impermissible medical or credibility opinions and those that are will be excluded.  Plaintiff offers no other reason why Dr. Broker's testimony should be excluded pursuant to Rule 403, and the Court finds that

14

the approved of testimony's probative value "is [not] substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

### C.  Plaintiff's Motion to Exclude Testimony of Dr. Hal Wortzel

Plaintiff moves to preclude Dr. Hal Wortzel from testifying at trial regarding (1) sixteen opinions involving plaintiff's alleged malingering and (2) eight opinions involving Dr. Wortzel's comments on one of plaintiff's retained experts. *See* Docket No. 70 at 5-15.  Dr. Wortzel was retained by defendant as an expert in neuropsychiatry and to conduct a Federal Rule of Civil Procedure Rule 35 medical examination. *See* Docket No. 70-2; Docket No. 78 at 5.

#### 1.  *Opinions Regarding Plaintiff's Credibility*

As to the first category of opinions, plaintiff argues that Dr. Wortzel impermissibly comments on plaintiff's credibility, which is prohibited by the Federal Rules of Evidence. *See* Docket No. 70 at 7-9.  As the Court noted earlier, not all comments on a plaintiff's credibility are impermissible.  Only when an opinion on a plaintiff's credibility goes beyond a witness's expertise and impinges on the jury's function to determine credibility will such opinions be excludable. *See Adams*, 271 F.3d at 1245.  Here, Dr. Wortzel is an expert in neuropsychiatry, something that plaintiff does not dispute.  Thus, Dr. Wortzel may opine on plaintiff's medical diagnoses, whether the claimed accident could cause plaintiff's injuries, and whether the medical record supports plaintiff's claimed injuries.  The Court addresses each of the allegedly problematic opinions in turn.

Before doing so, the Court addresses malingering and Dr. Wortzel's methodology.

Although plaintiff does not explicitly challenge Dr. Wortzel's methodology, plaintiff's

objections implicitly hinge on Dr. Wortzel methods for reaching his conclusions.

Malingering is the exaggeration of symptoms as a result of external factors. As

Dr. Wortzel notes, the Diagnostic and Statistical Manual of Mental Disorders states that

"malingering is the intentional production of false or grossly exaggerated physical or

psychological symptoms, motivated by external incentives." *See* Docket No. 78-1 at 2-

3, ¶ 8 (quoting Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental

Disorders* 726-27 (5th ed. 2013)). Furthermore, malingering should be suspected when

there is a "marked discrepancy between the individual's claimed stress or disability and

the objective findings and observations." *Id.* (quoting *Diagnostic and Statistical Manual

of Mental Disorders*, at 726-27). In other words, malingering is a psychiatric diagnosis

that may be reached when the objective medical evidence does not support claimed

symptoms. Mr. Wortzel, in developing his opinions on plaintiff's alleged malingering,

cites a variety of studies that demonstrate the effect malingering has on neurological

results. *See* Docket No. 70-2 at 14-16. For example, one medical study shows that

atypical results in neurological testing rarely are the result of mild traumatic brain injury

("mTBI"), but rather a host of other factors, such as litigation and malingering. *Id.* at 15.

That study shows that malingering is the number one predictor, with the pendency of

litigation being the seventh predictor out of fifteen. *Id.*

Dr. Wortzel utilizes these studies and the objective medical evidence in the

record to provide context to his neurological assessment of plaintiff. Dr. Wortzel

demonstrates a familiarity with plaintiff's alleged symptoms and the objective evidence

to explain and interpret the results of his assessment.  His general opinion is that, based on this objective evidence, the results of his testing show that the more likely explanation for plaintiff's claimed symptoms is malingering and the backdrop of litigation because the objective medical evidence does not comport with plaintiff's symptoms or her neurological testing results.  Dr. Wortzel's expertise in the field and his explanation shows that his "methodology was otherwise reliably applied."  *Crabbe*, 556 F. Supp. 2d at 1221; *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217-18 (noting that one factor to consider is whether the expert's methods have "been generally accepted by the scientific community" and that a plaintiff "need not prove that the expert is undisputably correct").  While the Court understands plaintiff's concern regarding credibility, Dr. Wortzel has shown that malingering is a neurological diagnosis that seeks to explain abnormal outcomes when compared to objective medical evidence.  Although Dr. Wortzel's "testimony may be damaging to [plaintiff's] theory of the case," *see Bamke v. J.B. Hunt Transp., Inc.*, 2019 WL 8807888, at *4 (E.D. Wis. Oct. 22, 2019) (allowing an expert to opine on malingering as a possible diagnosis), that does not render his opinions necessarily improper, particularly where he has explained why malingering is a diagnosis that should be considered in the context of this case.  *See Bonds v. Padlock*, 2008 WL 4889794, at *4 (E.D. La. Nov. 10, 2008) (permitting an expert to testify on malingering to explain the plaintiff's symptoms).  With these principles in mind, the Court addresses the opinions plaintiff seeks to exclude.

First, plaintiff seeks to exclude the opinion that, because of the "backdrop of litigation, litigation and exaggeration/malingering necessarily feature in the differential." *See* Docket No. 70 at 5.  The Court will not exclude this statement.  As already

discussed, in diagnosing mTBI, it may be appropriate to consider malingering.  Dr.

Wortzel explains how malingering and the pendency of litigation impact testing for and

diagnosing mTBI.  The opinion does not impermissibly discuss plaintiff's credibility

because it is within Dr. Wortzel's expertise.  Second, plaintiff seeks to exclude Dr.

Wortzel's opinion that, despite plaintiff's claims to the contrary, there is "no evidence of

a concussion" and that her "deterioration [is] entirely incompatible with the natural

history for mild TBI."  *Id.*  Plaintiff does not explain how this opinion improperly

comments on plaintiff's credibility, except implicitly suggesting that, because Dr.

Wortzel's medical opinion is that the medical evidence is inconsistent with plaintiff's

injuries, he must be commenting on her credibility.  However, the Court finds that this

opinion is within Dr. Wortzel's expertise; he simply is commenting on the medical

evidence and plaintiff's claimed injuries.

Third, plaintiff seeks to exclude Dr. Wortzel's opinion that "[w]e are once again

faced with a vivid illustration of the unfortunate state of mild TBI litigation, and the

manner in which such claims are retroactively manufactured" against the weight of the

medical evidence.  *Id.*  Dr. Wortzel may not opine on the state of mTBI litigation

generally, as it is irrelevant to the case.  Instead, he must confine his opinions to

plaintiff's case.  In doing so, he may comment on the various studies showing the

impact of litigation on neurological results, testing, and reported symptoms.  Fourth,

plaintiff seeks to exclude Dr. Wortzel's opinion that plaintiff's "evolving illness is then

punctuated by various themes of inconsistency" such that it "is difficult to not recognize

the manufactured quality to the neuropsychiatric injuries now being claimed."  *Id.*  The

Court will not exclude these opinions.  Whether plaintiff's claimed injuries have been

inconsistent temporally or inconsistent with the medical evidence is within Dr. Wortzel's expertise.  Moreover, whether the injuries are "manufactured" is consistent with his opinions regarding malingering; that is, he is comparing the medical evidence to the actual or expected outcomes.   Fifth, plaintiff seeks to exclude Dr. Wortzel's opinion that there is "no possible way a competent or objective evaluator . . . could diagnose mild TBI . . . .  That [plaintiff] has identified evaluators willing to do so would seem to speak to legal agendas and the aforementioned unfortunate state of mild TBI litigation."  *Id.* at 5-6.  While Dr. Wortzel is permitted to opine on whether the objective medical evidence is consistent with plaintiff's diagnosis or claimed injuries, he is not permitted to testify regarding the competency of Dr. Dennis Helffenstein or the state of TBI litigation, both for the reasons already stated.

Sixth, plaintiff seeks to exclude Dr. Wortzel's opinion that his practice "necessitates recognizing atypical outcomes and searching for more cogent and medically probable explanations when outcomes grossly defy expectations.  This is all the more true when such presentations are complicated by litigation and the motivations inherently associated with such matters.  Alternative explanations for persisting (or escalating) symptoms in the wake of a possible mild TBI may span a wide differential including . . . depression, anxiety . . . and/or malingering.  It is important to note that these are not mutually exclusive, and that genuine neuropsychiatric illness can coexist with subconscious somatic symptoms."  *Id.* at 6. For the reasons already stated, Dr. Wortzel may opine on the effects of litigation and malingering in the context of this case. He can additionally testify regarding the lack of medical evidence, the need to find better explanations, and the possible neurological explanations for plaintiff's claimed injuries.

Seventh and eighth, plaintiff seeks to exclude Dr. Wortzel's opinion regarding malingering, brain injury litigation, and diagnosing malingering. *See id.* As already stated, Dr. Wortzel utilizes medical studies and reliably applies them to the case. For the reasons stated, this opinion will not be excluded. Ninth, plaintiff seeks to exclude Dr. Wortzel's opinion regarding the "accepted methods for evaluating for possible malingering." *Id.* Dr. Wortzel discussed various studies regarding evaluating malingering and its causes; as a result, he may discuss the accepted methods for such a diagnosis, that the "occurrence of any concussive injury is already exceedingly unlikely," *id.,* and that the medical evidence does not comport with plaintiff's claimed injuries.

Tenth, plaintiff seeks to exclude Dr. Wortzel's opinion regarding PTSD. *See id.* at 6-7. Plaintiff does not explain how Dr. Wortzel's medical opinion regarding PTSD is not within Dr. Wortzel's expertise. Rather, this opinion is like the other opinions the Court has permitted: tied to the medical evidence and Dr. Wortzel's opinion that the medical evidence does not comport with the claimed injuries. Accordingly, this opinion will not be excluded. Eleventh, plaintiff seeks to exclude Dr. Wortzel's opinion that "across two different rounds of neuropsychological assessment, generated results suggestive of symptom exaggeration." *Id.* at 7. Again, Dr. Wortzel will be permitted to opine on how his neurological assessment is explained by malingering. In doing so, he may opine that the medical evidence does not support plaintiff's claimed injuries in her neuropsychological assessment. Twelfth and thirteenth, plaintiff seeks to exclude Dr. Wortzel's opinions regarding the evolution of plaintiff's injuries in the context of litigation. *See id.* While Dr. Wortzel may discuss the evolution of plaintiff's illness and whether it

comports with the medical evidence, his discussion of litigation must be confined to plaintiff's case, and not litigation generally.  Fourteenth, plaintiff seeks to exclude Dr. Wortzel's opinion that musculoskeletal injury "should rely heavily upon objective findings and circumstances surrounding the accident at issue."  *Id.*  Dr. Wortzel himself states that "commentary regarding potential musculoskeletal injury" should be left to "evaluators from the appropriate disciplines" and defendant does not offer any argument why Dr. Wortzel, a neuropsychiatrist, would be qualified to opine on the research practices of a completely different medical discipline.  Accordingly, this opinion will be excluded.

Fifteenth, plaintiff seeks to exclude Dr. Wortzel's opinion that, given plaintiff's "apparent provision of inaccurate history, . . . it would be prudent to obtain pre-accident treatment records for Ms. Gould should the present matter fail to resolve."  *Id.*  The Court finds this statement irrelevant and does not advance a material aspect of the litigation.  What defendant or plaintiff should do should this "matter fail to resolve," is irrelevant to the extent of plaintiff's injuries.  Accordingly, this opinion will be excluded. Sixteenth, plaintiff seeks to exclude Dr. Wortzel's opinion that "medical probability strongly favors malingering in the context of mTBI litigation."  *Id.*  As already discussed, Dr. Wortzel may not testify regarding mTBI litigation generally; his discussion must be limited to plaintiff's case.  Accordingly, any discussion regarding litigation generally will be excluded.  Seventeenth, plaintiff seeks to exclude Dr. Wortzel's opinion regarding the "medical probability" of malingering, the lack of compatibility regarding plaintiff's claimed injuries and the medical evidence, and the probability of malingering in the context of litigation.  *Id.* at 7-8.  Dr. Wortzel may not discuss probabilities or generalities.  He must

rely on the evidence in the record as to plaintiff's specifically.  Accordingly, this opinion

will be excluded.

Accordingly, as outlined above, Dr. Wortzel may opine within his medical

expertise regarding the medical evidence in the case, plaintiff's claimed injuries, and

whether those injuries align with the medical evidence.  In doing so, he may discuss

malingering and litigation and how those impact his assessment of plaintiff and her

alleged symptoms.

### 2. Comments on Plaintiff's Retained Expert

 Plaintiff seeks to exclude eight opinions of Dr. Wortzel's that comment on one of

plaintiff's retained experts, Dr. Dennis Helffenstein.  *See id.* at 10-11.  Specifically,

plaintiff argues that Dr. Wortzel's previous interactions with Dr. Helffenstein are

irrelevant because they do not advance a material aspect of the case.  *See id.*  The

Court agrees that any comments regarding Dr. Wortzel's previous interactions with Dr.

Helffenstein are irrelevant.[1]  However, not all of the identified opinions comment on the

relationship between the experts.

First, plaintiff seeks to exclude Dr. Wortzel's opinion that it "is increasingly difficult

to overstate the regularity with which I encounter Dr. Helffenstein . . . and the regularity

with which he engages in idiosyncratic practices to endorse grossly atypical outcomes."

*Id.* at 10.  How often Dr. Wortzel "encounter[s]" Dr. Helffenstein and whether he typically

engages in "idiosyncratic practices" does not advance the material facts in dispute:

whether and to what extent plaintiff was injured by the falling rocks.  While Dr. Wortzel

---

[1] Similarly, Dr. Helffenstein's comments about his previous experiences with Dr.
Wortzel are irrelevant.  *See, e.g.*, Docket No. 81-1 at 7-9.

may comment on whether Dr. Helffenstein's diagnosis comports with the objective medical evidence in this case, it is irrelevant what Dr. Helffenstein has done in previous cases.  Second and third, plaintiff seeks to exclude Dr. Wortzel's opinion that there is no evidence to support mTBI, but in a "typical fashion," "Dr. Helffenstein proceeds to diagnose one anyway," and that Dr. Helffenstein "proceeds to dismiss these validity signals."  *Id.* at 10-11.  Dr. Wortzel is comparing the objective medical evidence in the case to comment on plaintiff's retained expert.  This opinion will not be excluded.  However, Dr. Wortzel may not opine that this is done in "typical fashion," since, for the reasons already stated, Dr. Helffenstein's behavior in previous cases is irrelevant.

Fourth, plaintiff seeks to exclude Dr. Helffenstein's opinion that, without any medical evidence, Dr. Helffenstein diagnoses plaintiff with mild TBI and that it is "unclear how any competent or objective evaluator could possible offer such diagnostic formulations . . . and Dr. Helffenstein's willingness to do just that is again illustrative of previously referenced idiosyncratic tendencies and the role he so frequently plays in litigation of the present sort."  *Id.* at 11.  For the reasons already stated, Dr. Wortzel is permitted to discuss the objective medical evidence and compare that evidence to Dr. Helffenstein's diagnosis.  Dr. Wortzel may not, however, discuss previous "idiosyncratic tendencies" or the "role" Dr. Helffenstein plays in mild TBI litigation.  Fifth, plaintiff seeks to exclude Dr. Wortzel's opinion that Dr. Helffenstein proceeds to make his "typical recommendations" by using a "network" of providers that co-appear with him in mild TBI litigation.  *Id.*  The Court will exclude this opinion.  It does not assist the trier in fact because Dr. Wortzel has no expertise on whether or how the "network" of providers that plaintiff saw may have affected plaintiff's diagnoses.

Sixth and seventh, plaintiff seeks to exclude Dr. Wortzel's opinions that Dr. Helffenstein offers "false statements" in relation to certain tests and that the medical records do not demonstrate mild TBI. *Id.* The Court will not exclude these statements. The central issue in this case is the extent of plaintiff's injuries and their cause. As such, commenting on plaintiff's retained experts' diagnosis advances a material aspect of the case. Eighth, plaintiff seeks to exclude Dr. Wortzel's opinion that "[a]s is typical of his practice," Dr. Helffenstein is using certain tests to "rehabilitate what amounts to grossly suspect neuropsychological opinions." *Id.* While Dr. Wortzel may not comment on what is "typical" of Dr. Helffenstein's practice, he may opine that the relevant tests do not show what Dr. Helffenstein claims they show.

Plaintiff also argues that Dr. Wortzel should not be permitted to opine regarding "neuropsychology." *Id.* at 12. Plaintiff, however, does not identify any particular opinions that she wishes to exclude, as required by the Court's Practice Standards. The Court's Practice Standards state that a Rule 702 motion "shall identify with specificity each opinion the moving party seeks to exclude." Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.G. As a result, the Court does not address these non-identified opinions.

## IV. CONCLUSION

Wherefore, it is

**ORDERED** that defendant's Motion to Exclude the Expert Testimony of Augustine Ubaldi [Docket No. 68] is **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that Plaintiff's Motion to Preclude and Limit the Testimony of Jeffrey Broker [Docket No. 69] is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that Plaintiff's Motion to Preclude and Limit the Testimony of Hal Wortzel [Docket No. 70] is **GRANTED IN PART** and **DENIED IN PART**.

DATED September 27, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge